IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR. NO. 15-580-01 |
| | : | |
| NAKIA ADAMS | : | |

<u>ORDER</u>

AND NOW, this           day of                     , 2017, upon consideration of Defendant Nakia

Adams' Motion to Dismiss Count One of the Superseding Indictment, the Government's Response thereto,

and upon consideration of any hearing or argument held pursuant thereto, it is hereby

ORDERED AND DECREED

that Count One of the Superseding Indictment is hereby Dismissed.

BY THE COURT:

_____
Honorable Jeffrey L. Schmehl
United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :
       :
       v.        :        CR. NO. 15-580-01
       :
NAKIA ADAMS        :

## MOTION OF DEFENDANT NAKIA ADAMS TO DISMISS
## COUNT ONE OF THE SUPERSEDING INDICTMENT

AND NOW, comes the Defendant, NAKIA ADAMS, by and through his attorney, Luther E. Weaver, III, Esquire, to Move this Court to Dismiss Count One of the Superseding Indictment, and in support of said Motion, the Defendant hereby incorporates by reference herein his Memorandum of Law in Support of this Motion, which is attached hereto and incorporated by reference herein.

WHEREFORE, the Defendant hereby prays that the Court grants the Defendant's Motion to Dismiss Count One of the Superseding Indictment.

Respectfully submitted:

_____
LUTHER E. WEAVER, III, ESQUIRE
Weaver & Associates, P.C.
14th Floor, 1525 Locust Street
Philadelphia, PA 19102-3732
(215) 790-0600
Attorneys for Defendant Nakia Adams

Dated: August 31, 2017

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR. NO. 15-580-01 |
| | : | |
| NAKIA ADAMS | : | |

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT
NAKIA ADAMS' TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT

I.   BACKGROUND

A.   Relevance Procedural History

On or about December 8, 2015, the Government filed a twelve-count Indictment charging Defendant Nakia Adams with various violations of federal firearms laws. (Docket #1).

On February 2, 2016, a Superseding Indictment was filed with regard to the Defendant. (Docket #15). A true and correct copy of the Superseding Indictment is attached hereto as Exhibit "A."

In the Superseding Indictment, the Defendant was charged as follows:

- Conspiracy to make false statements regarding information required to be kept in the records of a federally licensed firearms dealer in violation of Title 18 U.S.C. § 924(a)(1)(A), all in violation of 18 U.S.C. § 371 (Count One);

- Making False Statements to a Federal Firearms Licensee in violation of Title 18 U.S.C. §§ 924(a)(1)(A) & 2 (Counts 2-12);

- Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) (Counts 13-20).
- A Notice of Forfeiture was also filed.

This case has been assigned to the calendar of the Honorable Jeffrey L. Schmehl.

The Defendant was arraigned on the Superseding Indictment on March 4, 2016, at which time he pled not guilty to all Counts.

Trial commenced on June 12, 2017, but ended on June 15, 2017, when a mistrial was declared for reasons set forth on the record. On or about June 15, 2017, during the trial of this matter, Attorney James M. Polyak moved this Court to withdraw as counsel for Defendant Nakia Adams. On that same day, the Court granted the Motion to Withdraw (Docket #110). Also, on June 15, 2017, the Court appointed undersigned counsel to represent the Defendant going forward. (Docket #111).

    B.    <u>Relevant Factual Background</u>

        1.    <u>The Superseding Indictment</u>

            a.    <u>Count One - The Conspiracy Count</u>

In Count One, the Defendant is charged with Conspiracy to make false statements regarding information required to be kept in the records of federally licensed firearms dealers, in violation of Title 18 U.S.C. § 924(a)(1)(A), all in violation of 18 U.S.C. § 371 (Count One).

Paragraph 12 of the Superseding Indictment contains a broad allegation that the Defendant conspired with several individuals to commit offenses against the United States, but the Paragraph does not allege that all of the individuals specifically mentioned conspired with each other:

> From on or about May 6, 2015, through on or about July 29, 2015, in the Eastern District of Pennsylvania and elsewhere, defendant **NAKIA ADAMS, a/k/a "S," a/k/a "SHAWN,"** conspired and agreed with others known and unknown to the grand jury, including Elvin Reyes, Jr., Randy Johnson, Jessica Gonzalez, Malachi Kelchner, and Sitara Rathod, persons known to the grand jury and charged elsewhere, to commit an offense against the United States, that is, to make false statements with respect to the information required to be kept in the records of a federally licensed firearms dealer, in violation of Title 18, United States Code, Section 924(a)(1)(A).

Similarly, in examining the "Manner and Means" description in Paragraph 13 of the Superseding Indictment, the allegations are very clear in alleging that the Defendant directed each of these individuals

to engage in illegal activity, but does not cite to any combination of activities nor any single agreement among them.

> 13.     Defendant NAKIA ADAMS directed Elvin Reyes, Jr., Randy Johnson, Jessica Gonzalez and Sitara Rathod each to purchase firearms for defendant ADAMS, requiring thereby that Elvin Reyes, Jr., Randy Johnson, Jessica Gonzalez and Sitara Rathod each falsely represent to the FFL that each of them, rather than defendant ADAMS, was the actual buyer of the firearms.

Upon examining the Overt Acts of Count One, the alleged overt acts are divided up into segments by dates, individuals, Federal Firearms Licensees and guns either purchased or attempted to be purchased. Attached hereto as Exhibit "B" is a chart outlining the specifics of the Overt Acts in the Indictment. However, the dates and the individuals involved in the purchases or attempted purchases allegedly with the Defendant are as follows:

| OVERT ACT | DATES | PARTICIPANTS |
| --- | --- | --- |
| 1 | 5-6-15 | Elvin Reyes, Jr. |
| 2 | 5-7-15 | Elvin Reyes, Jr. |
| 3 | 5-13-15 | Elvin Reyes, Jr. |
| 4 | 5-19-15 | Elvin Reyes, Jr. |
| 5 | 6-19-15 | Jessica Gonzalez and Malachi Kelchner |
| 6 | 6-19-15 | Jessica Gonzalez and Malachi Kelchner |
| 7 | 6-20-15 | Jessica Gonzalez and Malachi Kelchner |
| 8 | 6-20-15 | Jessica Gonzalez and Malachi Kelchner |
| 9 | 6-21-15 | Jessica Gonzalez, Malachi Kelchner, Randy Johnson |
| 10. | 6-22-15 | Jessica Gonzalez and Malachi Kelchner |
| 11. | 6-22-15 | Jessica Gonzalez and Malachi Kelchner |

| 12. | 7-9-15 | Sitara Rathod |
| 13. | 7-10-15 | Sitara Rathod |
| 14. | 7-29-15 | Sitara Rathod |

The allegations in the Superseding Indictment purport to tell a tale of the Defendant creating and orchestrating a plan to obtain weapons by using certain individuals who do not have criminal records, to obtain them for him at several Federal Firearm Licensee establishments. As alleged in the Superseding Indictment, this was a scheme created by the Defendant alone. There are no allegations that anyone other than the Defendant created and orchestrated this scheme, and no partners of the Defendant have been identified as being members of the scheme.

The individuals in the Superseding Indictment who are alleged to have made or who attempted to make the gun purchases are all alleged pawns of the Defendant, who he utilized for a brief period of time, and then his utilization of them in this scheme ended: Elvin Reyes, Jr., May 6-May 19, 2015; Jessica Gonzalez, Malachi Kelchner, Randy Johnson, June 19 to June 22, 2015; and Sitara Rathod, July 9-July 29, 2015.

The Government has alleged that there was one grand conspiracy involving the Defendant and his pawns. However, there are certain critical facts which establish, according to the Superseding Indictment, that there was not one grand conspiracy, but multiple conspiracies, if the Government's evidence is to be believed. Those significant facts are as follows:

● There is no overlapping of the time periods when these separate individuals were purportedly involved in the scheme. Indeed, the pattern is more reflective of an employer hiring temporary employees on an as-needed basis.

● There was also no overlapping of these purported pawns who were supposedly utilized by the Defendant in this scheme. Referring to these alleged co-conspirators as "A" (Elvin Reyes,

Jr.), "B" (Jessica Gonzalez, Malachi Kelchner, Randy Johnson; and "C" (Sitara Rathod), there are no allegations in the Indictment that there was any joint activity among nor between A, B and C.

●     As the pawns came and went, there are no allegations that the Defendant had even one constant or steady partner who was knowingly involved in this scheme throughout, other than himself. He alone was the core of the alleged conspiracy. See: United States v. Boyd, 595 F.2d 120, 123 (3rd Cir. 1978).

        b.    Substantive Counts-Two-Twenty

As is customary, the Overt Acts in the Superseding Indictment are connected with substantive counts against the Defendant for both Making False Statements to a Federal Firearms Licensee in violation of Title 18 U.S.C. §§ 924(a)(1)(A) & 2 (Counts 2-12), and Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) (Counts 13-20), as follows:

| COUNTS | DATES | CHARGES | PARTICIPANTS |
|---|---|---|---|
| 2,13 | 5-6-15 | 924, 922 | Elvin Reyes, Jr. |
| 3, 14 | 5-7-15 | 924, 922 | Elvin Reyes, Jr. |
| 4,15 | 5-13-15 | 924, 922 | Elvin Reyes, Jr. |
| 5 | 5-19-15 | 924 | Elvin Reyes, Jr. |
| 6,16 | 6-19-15 | 924, 922 | Jessica Gonzalez and Malachi Kelchner |
| 7 | 6-19-15 | 924 | Jessica Gonzalez and Malachi Kelchner |
| 8,17 | 6-20-15 | 924, 922 | Jessica Gonzalez and Malachi Kelchner |
| 9,18 | 6-21-15 | 924, 922 | Jessica Gonzalez, Malachi Kelchner, Randy Johnson |
| 10,19 | 6-22-15 | 924, 922 | Jessica Gonzalez and Malachi Kelchner |
| 11 | 6-22-15 | 924 | Jessica Gonzalez and Malachi Kelchner |

| 12 | 7-9-15 | 924 | Sitara Rathod |
| 20 | 7-10-15 | 922 | Sitara Rathod |

### 2. The Discovery

The discovery in this case confirmed the facts set forth above that in Count One, the Defendant has been charged with multiple conspiracies as opposed to one. As an example, counsel has reviewed the Reports of Interviews and <u>Jencks</u> material in the form of grand jury testimony and proffers provided by the Government in discovery. During all of the interviews of the alleged coconspirators, the case agents responsibly showed photographs of alleged conspirators A, B and C to each other in an attempt to determine whether or not there was any overlapping among them. In each case, A, B and C responded that they did not know each other, let alone being involved in any type of conspiratorial agreement with each other.

## II. ARGUMENT

### A. Legal Principles

#### 1. Charging of One Crime per Count in an Indictment - General Principles

The Rules of Criminal Procedure regarding the charging of offenses are designed to insure that the interests of justice will be served without prejudice to any defendant. Rule 8 of the Federal Rules of Criminal Procedure, which governs joinder of offenses and defendants in a criminal prosecution, provides as follows:

> An Indictment may charge the defendant in separate counts with more than one crime if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Federal Rule of Criminal Procedure 8(a).

The first dictate from Rule 8(a) is that a defendant must be charged with each crime in a separate count: "An Indictment may charge the defendant in separate counts..." Rule 8(a), Fed. R. Crim P. The

second dictate is that joinder is appropriate pursuant to Rule 8(a) when "offenses are of the same or similar character." U.S. v. McGill, 964 F.2d. 222, 241 (3rd Cir. 1992), quoting U.S. v. Eufrasio, 935 F.2d. 552 (3rd Cir. 1991). The relevant inquiry is whether a "transaction or nexus" exists between the offenses charged in the Indictment and whether the counts arise out of a "common series of acts or transactions." U.S. v. DiLeo, 859 F. Supp. 940, 942 (W.D. 1994), quoting U.S. vs. Eufrasio, 935 F.2d. at 570 n. 20 (3rd Circuit 1991).

Rule 14(a) of the Federal Rules of Civil Procedure provides Relief for improper charging in an indictment. In relevant part, the Rule provides as follows:

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

     2.    <u>Duplicity</u>

When the single charge per count dictates of Rule 8 are violated, the result is illegal *duplicity*. Duplicity is the improper joining of distinct and separate offenses in a single count. U.S. v. Haddy, 134 F.3d 542, 548 (3d Cir. 1998) (citing United States v. Starks, 515 F.2d 112, 116 (3d Cir. 1975)). In order to determine whether a count in an indictment is duplicitous, a court must determine the "allowable unit of prosecution." Haddy, 134 F.3d at 548 (citing United States v. Arnick, 439 F.2d 351, 359 (7th Cir. 1971); United States v. Schwartz, 899 F.2d 243, 248 (3d Cir. 1990); United States v. Bortnick, 2005 U.S. Dist. LEXIS 172, *1-2, 2005 WL 40054 (E.D. Pa. Jan. 6, 2005).

The remedy for duplicity is dismissal of the count or the indictment. United States v. Starks, 515 F.2d 112, 117 (3d Cir. 1975); United States v. Bortnick, 2005 U.S. Dist. LEXIS 172, *4, 2005 WL 40054 (E.D. Pa. Jan. 6, 2005).

B.    Count One is Duplicitous as it Charges Multiple Conspiracies

The Defendant contends that Count One of the Superseding Indictment suffers from illegal duplicity as it charges multiple conspiracies as opposed to one, and that the Defendant will suffer substantial prejudice if Count One is not dismissed.

The gist of the crime of conspiracy ". . . is the agreement . . . to commit one or more unlawful acts." Braverman v. United States, 317 U.S. 49, 53, 63 S. Ct. 99 (1942). Multiple conspiracies are defined as "separate networks operating independently of each other." United States v. Barr, 963 F.2d 641, 648 (3d Cir. 1992). Therefore, multiple agreements to commit separate crimes constitute multiple conspiracies. United States v. Broce, 488 U.S. 563, 571, 109 S. Ct. 757 (1989).

In United States v. Kelly, 892 F.2d 255 (3d Cir. 1989), the Court of Appeals for the Third Circuit adopted a three-factor test to determine whether a group of individuals are engaged in a single conspiracy or in multiple conspiracies. The Court held that a court should consider:

(1)    "whether there was a common goal among the conspirators";

(2)    "whether, looking at the nature of the scheme, the agreement contemplated bringing to pass a continuous result that w[ould] not continue without the continuous cooperation of the conspirators"; and

(3)    "the extent to which the participants overlap in the various dealings." Id. at 259.

The Court has also held that the absence of one of these factors "does not necessarily defeat an inference of the existence of a single conspiracy." United States v. Padilla, 982 F.2d 110, 115 (3d Cir. 1992).

Applying the Kelly factors to this case, it becomes clear as a matter of law that the Government has charged multiple conspiracies in Count One as opposed to a single conspiracy. Regarding the first factor, there is no evidence of any common goal among conspirators A, B or C. According to the Superseding

-8-

Indictment, the goals for each of the alleged co-conspirators was to buy different weapons, on different days, for the Defendant without the involvement of the other alleged co-conspirators. Once their purchases were completed, the evidence establishes that they went away and were never heard of again with regard to the alleged scheme.

Regarding the second <u>Kelly</u> standard, there was no continuous cooperation among these alleged co-conspirators because there is no evidence of any agreement or interaction among them. At best, the Government's evidence would show that each had a separate and independent agreement with the Defendant which establishes multiple conspiracies, and not just one.

Finally, there is absolutely no evidence of any overlapping of the participants in the various dealings, the third <u>Kelly</u> standard.

In judging the case before this Court, the case which provides the most guidance is the Supreme Court decision of <u>Kotteakos v. United States</u>, 328 U.S. 750, 66 S. Ct. 1239 (1946), where the structure of the alleged conspiracy was strikingly similar to the one charged herein. The Supreme Court described the scenario in <u>Kotteakos</u>, in which 32 individuals were charged in a single conspiracy to obtain loans under a Fair Housing Act program by making false applications. Simon Brown was at the center of the alleged conspiracy, helping different groups of individuals obtain these loans. <u>Id</u>. at 752-53. The Supreme Court found that these facts failed to prove a single conspiracy:

> Except for Brown, the common figure, no conspirator was interested in whether any loan except his own went through. And none aided in any way, by agreement or otherwise, in procuring another's loan. The conspiracies therefore were distinct and disconnected, not parts of a larger general scheme, both in the phase of agreement with Brown and also in the absence of any aid given to others as well as in specific object and result. There was no drawing of all together in a single, over-all, comprehensive plan.

Also, see: <u>Blumenthal v. United States</u>, 332 U.S. 539, 558 (1947) (discussing <u>Kotteakos</u>).

-9-

Similarly, in <u>United States v. Kemp</u>, 500 F.3d 257 (3d Cir. 2007), the Third Circuit addressed a hub and spoke conspiracy in an honest services fraud prosecution involving former Philadelphia Treasurer Corey Kemp. In <u>Kemp</u>, co-defendants Holck and Umbrell, as executives at Commerce Bank, extended otherwise-unavailable personal loans to Kemp in order to earn contracts and increase cash deposits from the City of Philadelphia. <u>Id</u>. at 264, 266-68. Co-defendant Hawkins, a businessman, wrote checks to Kemp in order to encourage the City of Philadelphia to invest pension funds in Hawkins' business proposals. <u>Id</u>. at 270-71. The Third Circuit found that these constituted multiple conspiracies rather than a single conspiracy. There was a conspiracy between Kemp and Holck/Umbrell and a separate conspiracy between Kemp and Hawkins. <u>Id</u>. at 287-91. There was no evidence that Holck/Umbrell knew about Hawkins' activities and their activities were neither interdependent nor mutually supportive. <u>Id</u>. at 288-89. Therefore, the Government had failed to prove a single hub and spokes conspiracy as there was insufficient "overlap among the spokes." <u>Id</u>. at 291.

Similarly here, Count One describes a "hub-and spoke" conspiracy with Defendant Adams as the hub and the alleged transactions with A-Reyes/B-Gonzalez, Kelchner, Johnson/ and C-Rathod as separate spokes. However, the Indictment fails to establish a rim connecting each spoke and therefore, fails to allege a single overarching conspiracy.

Based upon the Superseding Indictment, undisputed facts in this case and the authorities cited above, the Defendant contends that Count One of the Superseding Indictment is duplicitous in nature as a matter of law.

C.     <u>Count One Must be Dismissed as it Affects the Substantial Rights of the Defendant</u>

The single versus multiple conspiracy analysis often takes place following trial, when the indictment alleging a single conspiracy varies from the proof presented at trial which establishes multiple

conspiracies. We indeed anticipate that the Government may argue that this Motion is premature. However, the Motion is not premature for the reasons set forth below.

    1.    Count One of the Superseding Indictment is Duplicitous as a Matter of Law

As argued above, the Defendant contends that the facts are so clear in this matter, and the precedents clearly applicable, that this Court, based upon the current record, may conclude that Count One of the Superseding Indictment is duplicitous as a matter of law. Therefore, the single versus multiple conspiracy issue is not a jury question in this matter, and it is in the interest of judicial economy for the Court to dismiss Count One at this time rather than wait until after a lengthy trial and have that issue reviewed on appeal and any conviction potentially reversed.

    2.    The Defendant Will Suffer Extreme Prejudice if Tried on Count One

The Defendant is well aware that whether Count One of the Superseding Indictment is duplicitous is not the sole inquiry to be resolved with respect to this Motion. The second inquiry is whether the Defendant may face substantial prejudice if tried on Count One. (Quoting United States v. Berger, 295 U.S. 78, 82, 55 S. Ct. 629 (1936), the Supreme Court stated that the test is "not whether there has been a variance of proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused." Kotteakos, 328 U.S. at 757).

In United States v. Starks, 515 F.2d 112, 116 (3d Cir. 1975), the Court held that an indictment was duplicitous when a single count charged both a conspiracy and an attempt to violate the Hobbs Act, 18 U.S.C. § 1951. Id. In describing the dangers of duplicity, the Third Circuit wrote:

> One vice of duplicity is that a general verdict for a defendant on that count does not reveal whether the jury found him not guilty of one crime or not guilty of both. Conceivably this could prejudice the defendant in protecting himself against double jeopardy. Another vice of duplicity is that a general verdict of guilty does not disclose whether the jury found the defendant guilty of one crime or of both. Conceivably, this could prejudice the defendant in sentencing and in obtaining appellate review. A third vice of

-11-

duplicity is that it may prejudice the defendant with respect to evidentiary rulings during the trial, since evidence admissible on one offense might be inadmissible on the other. Joining conspiracy and substantive offenses in the same count present this vice in a particularly aggravated form, because of the admissibility of declarations made by coconspirators. Assuming such a joinder, and a general guilty verdict, there would ordinarily be no way of discerning whether the jury found the defendant guilty of the offense in proof of which such coconspirator's admissions were properly admitted. Finally, there is no way of knowing with a general verdict on two separate offenses joined in a single count whether the jury was unanimous with respect to either.

Id. at 116-117. In cases of duplicitous counts, the Court must either dismiss the count or require the Government to make a pretrial election among the various offenses charged in the single count. Id. at 117.

Knowing the power of the Government to present superseding indictments to a grand jury, one might question whether the Defendant would rather be tried on one multiple conspiracy count as opposed to potentially three separate conspiracy counts. However, that inquiry would be misplaced. The Defendant faces today, and not tomorrow. The question for *today* is whether, with this Superseding Indictment, the Defendant stands to suffer substantial prejudice at trial, and the answer is yes. We demonstrated more fully below.

    a.   <u>Prejudicial Spillover Effect of Three Separate Conspiracies Tried Together</u>

The Defendant will suffer extreme prejudice by being subject to this duplicitous Count. A review of discovery indicates that the Government's evidence is not equally strong with regard to the three independent conspiracies. If the jury believes that one of the conspiracies existed and not the others, the jury may very well convict the Defendant of one overall conspiracy based upon his transactions with one of the co-conspirators and not of the others. This is particularly likely in light of the unevenness of the evidence and the Court's anticipated charge that the Government does not have to prove that all of the overt acts are true. Were the conspiracies separated into separate counts, the Defendant would have an

-12-

opportunity to defeat the alleged conspiracies where the evidence is weaker. See: United States v. Camiel, 689 F.2d 31, 37-38 (3rd Cir. 1982).

b.     <u>Prejudice will be Suffered from a General Verdict</u>

A general verdict of guilty will not disclose whether the jury found the Defendant guilty of one crime or of both, which will prejudice the Defendant in sentencing and in obtaining appellate review. Id.

c.     The Defendant will Suffer Prejudice with Regard to<br><u>the Admissibility of Evidence</u>

The Defendant will undoubtedly suffer prejudice with regard to evidentiary rulings during the trial, since evidence admissible with regard to one conspiracy most likely would not be admissible with regard to another conspiracy. The problem is particularly aggravated, because of the admissibility of declarations made by coconspirators.

A second tier of evidentiary issues that is problematic for the Defendant is the Government's ability to overcome the restrictions of Rule 404(b) of the Federal Rules of Evidence. Since the conspiracies charged in Count One are separate and independent, in essence the Government will be permitted to introduce evidence of the various conspiracies which will have the effect of establishing propensity on the part of the Defendant, which is specifically prohibited by Rule 404(b). In addition, the Government will be able to avoid the restrictions established by the Supreme Court to protect a defendant's rights from the improper use of bad act evidence:

(1)     the evidence must have a proper purpose under Rule 404(b);

(2)     it must be relevant under Rule 402;

(3)     its probative value must outweigh its prejudicial effect under Rule 403; and

(4)     the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted. <u>Huddleston v. United States</u>, 485 U.S. 681, 691-92, 108 S. Ct. 1496, 1502 (1988).

### d.   <u>Prejudicial Effect upon the Substantive Counts</u>

It is axiomatic that as the jury's decision on the conspiracy goes, so goes the jury's verdict regarding the substantive counts. If the jury is convinced of one of the conspiracies, and therefore finds the Defendant guilty of the overall conspiracy as charged, there is a substantial possibility that jury will find the Defendant guilty of all of the substantive counts which are connected to the overall conspiracy. If these multiple conspiracies had been properly separated, Defendant may have had the ability to defeat a particular conspiracy count and the related substantive counts.

### III.   <u>CONCLUSION</u>

For the above reasons stated and authorities cited, this Court must dismiss Count One of the Superseding Indictment in the interest of justice.

Respectfully submitted:

LUTHER E. WEAVER, III, ESQUIRE
Weaver & Associates, P.C.
14th Floor, 1525 Locust Street
Philadelphia, PA 19102-3732
(215) 790-0600
Attorneys for Defendant Nakia Adams

Dated: August 31, 2017

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.   15-580** |
| **v.** | : | **DATE FILED: February 2, 2016** |
| **NAKIA ADAMS,**<br>   a/k/a "S,"<br>   a/k/a "SHAWN" | : | |
| | : | **VIOLATIONS:**<br>**18 U.S.C. § 371 (conspiracy – 1 count)** |
| | : | **18 U.S.C. § 924(a)(1)(A)(making false statements to a federal firearms licensee – 11 counts)** |
| | : | **18 U.S.C. § 922(g)(1)(felon in possession of a firearm – 8 counts)** |
| | : | **18 U.S.C. § 2(aiding and abetting)**<br>**Notice of forfeiture** |

## SUPERSEDING INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

1.    Cabela's, located at 100 Cabela Drive, Hamburg, Pennsylvania ("Cabela's"), possessed a federal firearms license ("FFL") and was authorized to deal in firearms under federal laws.

2.    Backwoods Outfitters, located at 2421 Ironville Pike, Columbia, Pennsylvania ("Backwoods Outfitters"), possessed an FFL and was authorized to deal in firearms under federal laws.

3.    Trop Gun Shop, located at 910 N Hanover Street, Elizabethtown, Pennsylvania, possessed an FFL and was authorized to deal in firearms under federal laws.

4.      Kinsey's Outdoors, located at 1658 Steel Way, Mount Joy, Pennsylvania ("Kinsey's"), possessed an FFL and was authorized to deal in firearms under federal laws.

5.      Bass Pro Shops, located at 3501 Paxton Street, Harrisburg, Pennsylvania ("Bass Pro Shop"), possessed an FFL and was authorized to deal in firearms under federal laws.

6.      Jim Hake's Sporting Goods, located at 100 Willow Street, Wrightsville, Pennsylvania ("Jim Hake's"), possessed an FFL and was authorized to deal in firearms under federal laws.

7.      FFL holders are licensed, among other things, to sell firearms and ammunition.   Various rules and regulations, promulgated under the authority of Chapter 44, Title 18, United States Code, govern the manner in which FFL holders are permitted to sell firearms and ammunition.

8.      The rules and regulations governing FFL holders require that a person seeking to purchase a firearm fill out a Firearm Transaction Record, ATF Form 4473 ("Form 4473").   Part of the Form 4473 requires that the prospective purchaser certify that all his or her answers on Form 4473 are true and correct.   Question 11.a. of the Form 4473 requires that the prospective purchaser certify truthfully, subject to penalties of perjury, that he or she was the actual buyer of the firearm.   The Form 4473 contains the following language in bold type: **"Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person.   If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you."**   In the certification section of the Form 4473, the actual buyer must certify that his or her answers to the questions on the form are "true, correct, and complete," and acknowledge by his or her signature that "making any false oral or written statement . . . is a crime punishable as a felony under Federal law, and may also violate State and/or local law."

2

9.      FFL holders are required by law to maintain a record, in the form of a completed Form 4473, of the identity of the actual buyer of firearms sold by the FFL holder, including the buyer's home address and date of birth.

10.      A person who purchases a firearm at the behest of another person and falsely states on the Form 4473 that he or she is the actual buyer of the firearm is known as a "straw purchaser."

11.      Defendant NAKIA ADAMS was barred from legally purchasing and possessing a firearm because he had previously been convicted of a felony crime for which he could be punished by more than one year of imprisonment.

12.      From on or about May 6, 2015, through on or about July 29, 2015, in the Eastern District of Pennsylvania and elsewhere, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

conspired and agreed with others known and unknown to the grand jury, including Elvin Reyes, Jr., Randy Johnson, Jessica Gonzalez, Malachi Kelchner, and Sitara Rathod, persons known to the grand jury and charged elsewhere, to commit an offense against the United States, that is, to make false statements with respect to the information required to be kept in the records of a federally licensed firearms dealer, in violation of Title 18, United States Code, Section 924(a)(1)(A).

**MANNER AND MEANS**

It was part of the conspiracy that:

13.      Defendant NAKIA ADAMS directed Elvin Reyes, Jr., Randy Johnson, Jessica Gonzalez and Sitara Rathod each to purchase firearms for defendant ADAMS, requiring thereby that Elvin Reyes, Jr., Randy Johnson, Jessica Gonzalez and Sitara Rathod each falsely

3

represent to the FFL that each of them, rather than defendant ADAMS, was the actual buyer of the firearms.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, the following overt acts, among others, were committed in the Eastern District of Pennsylvania and elsewhere:

1.     On or about May 6, 2015:

(a)     At the direction of defendant NAKIA ADAMS, Elvin Reyes, Jr. was driven to Cabela's, where defendant ADAMS instructed Elvin Reyes, Jr. to purchase multiple firearms for defendant ADAMS.

(b)     Defendant NAKIA ADAMS provided Elvin Reyes, Jr. with cash to make the firearms' purchase.

(c)     Elvin Reyes, Jr. entered Cabela's and purchased three firearms for a total of $943.77, as follows: (i) a Taurus, model 709 SLIM, 9 mm semiautomatic pistol with serial number TIO80940; (2) a Taurus, model 709 SLIM, 9 mm semiautomatic pistol with serial number TIO81095; and (3) a Smith & Wesson, model SW40F, .40 caliber semiautomatic pistol with serial number PAA3575, falsely representing on the Form 4473 that Elvin Reyes, Jr. was the actual buyer of the firearms.

(d)     After purchasing the firearms for defendant NAKIA ADAMS, Elvin Reyes, Jr. gave the firearms to defendant ADAMS.

(e)     After the purchase of the three firearms at Cabela's, defendant NAKIA ADAMS and Elvin Reyes, Jr. drove to Newark, New Jersey where defendant ADAMS transferred the three firearms to an individual or individuals unknown to the grand jury.

2.     On or about May 7, 2015:

4

    (a)    At the direction of defendant NAKIA ADAMS, Elvin Reyes, Jr. was driven to Backwoods Outfitters, where defendant ADAMS instructed Elvin Reyes, Jr. to purchase multiple firearms for defendant ADAMS.

    (b)    Defendant NAKIA ADAMS provided Elvin Reyes, Jr. with cash to make the firearms' purchase.

    (c)    Elvin Reyes, Jr. entered Backwoods Outfitters and purchased three firearms for a total of $1028.44, as follows: (i) a Taurus, model 24/7, .45 caliber semiautomatic pistol with serial number NIM20035; (ii) a Taurus, model 24/7C, .40 caliber semiautomatic pistol with serial number SHR40400; and (iii) a Taurus, model 24/7, .40 caliber semiautomatic pistol with serial number SHP34831, falsely representing on the Form 4473 that Elvin Reyes, Jr. was the actual buyer of the firearms.

    (d)    After purchasing the firearms for defendant NAKIA ADAMS, Elvin Reyes, Jr. gave the firearms to defendant ADAMS.

    (e)    After the purchase of the three firearms at Backwoods Outfitters, defendant NAKIA ADAMS and Elvin Reyes, Jr. drove to Newark, New Jersey where defendant ADAMS transferred the three firearms to an individual or individuals unknown to the grand jury.   On June 30, 2015, the Taurus, model 24/7, .40 caliber semiautomatic pistol bearing serial number SHP34831, straw purchased by Elvin Reyes, Jr. for defendant ADAMS, was recovered from A.B., an individual arrested on that date by law enforcement in Newark, New Jersey.

    3.    On or about May 13, 2015:

    (a)    At the direction of defendant NAKIA ADAMS, Elvin Reyes, Jr. was driven to Backwoods Outfitters, where defendant ADAMS instructed Elvin Reyes, Jr. to purchase multiple firearms for defendant ADAMS.

(b)      Defendant NAKIA ADAMS provided Elvin Reyes, Jr. with cash to make the firearms' purchase.

(c)      Elvin Reyes, Jr. entered Backwoods Outfitters and purchased three firearms for a total of $901.25, as follows: (i) a Ruger, model LC9, 9mm semiautomatic pistol with serial number 322-38598; (ii) a SCCY, model CPX2, 9mm semiautomatic pistol with serial number 219435; and (iii) an SCCY, model CPX2, 9mm semiautomatic pistol with serial number 219460, falsely representing on the Form 4473 that Elvin Reyes, Jr. was the actual buyer of the firearms.

(d)      After purchasing the firearms for defendant NAKIA ADAMS, Elvin Reyes, Jr. gave the firearms to defendant ADAMS.

(e)      After the purchase of the three firearms at Backwoods Outfitters, defendant NAKIA ADAMS and Elvin Reyes, Jr. drove to Newark, New Jersey where defendant ADAMS transferred the three firearms to an individual or individuals unknown to the grand jury.   On September 3, 2015, the Ruger, model LC9, 9mm semiautomatic pistol with serial number 322-38598, straw purchased by Elvin Reyes, Jr. for defendant ADAMS, was recovered from R.R., an individual arrested on that date by law enforcement in Newark, New Jersey.   On September 24, 2015, the SCCY, model CPX2, 9mm semiautomatic pistol with serial number 219460, straw purchased by Elvin Reyes, Jr. for defendant ADAMS, was recovered from A.J., an individual arrested on that date by law enforcement in Newark, New Jersey.

4.      On or about May 19, 2015:

(a)      At the direction of defendant NAKIA ADAMS, Elvin Reyes, Jr. was driven to Backwoods Outfitters, where defendant ADAMS instructed Elvin Reyes, Jr. to purchase multiple firearms for defendant ADAMS.

      (b)     Defendant NAKIA ADAMS provided Elvin Reyes, Jr. with cash to make the firearms' purchase.

      (c)     Elvin Reyes, Jr. entered Backwoods Outfitters and attempted to purchase three firearms for a total of $880.05, as follows: (i) a Kel-Tec, model P11, 9mm semiautomatic pistol with serial number AW554; (ii) a Bersa Thunder, model Thunder, .40 caliber semiautomatic pistol with serial number F36946; and (iii) an SCCY, model CPX1, 9mm semiautomatic pistol with serial number 213200, falsely representing on the Form 4473 that Elvin Reyes, Jr. was the actual buyer of the firearms.

      (d)     Backwoods Outfitters denied the purchase of the firearms.

      5.     On or about June 19, 2015:

      (a)     At the direction of defendant NAKIA ADAMS, Jessica Gonzalez and Malachi Kelchner were driven to Backwoods Outfitters, where defendant ADAMS instructed Jessica Gonzalez to purchase multiple firearms for defendant ADAMS.

      (b)     Defendant NAKIA ADAMS provided Jessica Gonzalez with cash to make the firearms' purchase.

      (c)     Jessica Gonzalez and Malachi Kelchner entered Backwoods Outfitters and attempted to purchase two firearms for a total of $505.10, as follows: (i) a Kel-Tec, Model P11, 9 mm semiautomatic pistol with serial number AW554; and (ii) a Smith & Wesson, Model SW40VE, .40 caliber semiautomatic pistol with serial number PDN1830, falsely representing on the Form 4473 that Jessica Gonzalez was the actual buyer of the firearms.

      (d)     Backwoods Outfitters denied the purchase of the firearms.

      6.     On or about June 19, 2015:

      (a)     Defendant NAKIA ADAMS drove Jessica Gonzalez and Malachi

Kelchner to Trop Gun Shop, and defendant ADAMS instructed Jessica Gonzalez to purchase multiple firearms for defendant ADAMS.

      (b)     Defendant NAKIA ADAMS provided Jessica Gonzalez with cash to make the firearms' purchase.

      (c)     Jessica Gonzalez and Malachi Kelchner entered Trop Gun Shop and purchased two firearms for a total of $539.08, as follows: (i) a Taurus, Model PT140, .40 caliber semiautomatic pistol with serial number SAM92140; and (ii) a Taurus, Model PT 24/7, .45 caliber semiautomatic pistol with serial number NZI04849, falsely representing on the Form 4473 that Jessica Gonzalez was the actual buyer of the firearms.

      (d)     After purchasing the firearms for defendant NAKIA ADAMS, Jessica Gonzalez gave the firearms to defendant ADAMS.

      (e)     After the purchase of the two firearms at Trop Gun Shop, defendant NAKIA ADAMS, Jessica Gonzalez and Malachi Kelchner drove to Newark, New Jersey where defendant ADAMS sold or traded the two firearms to an individual unknown to the grand jury in exchange for cash or drugs, or both.

      7.     On or about June 20, 2015:

      (a)     Defendant NAKIA ADAMS drove Jessica Gonzalez and Malachi Kelchner to Kinsey's, and defendant ADAMS instructed Jessica Gonzalez to purchase multiple firearms for ADAMS.

      (b)     Defendant NAKIA ADAMS provided Jessica Gonzalez with cash to make the firearms' purchase.

      (c)     Jessica Gonzalez and Malachi Kelchner entered Kinsey's and purchased one firearm for approximately $270, that is a Taurus, Model PT111, 9 mm semiautomatic pistol

with serial number TUL22702, falsely representing on the Form 4473 that Jessica Gonzalez was the actual buyer of the firearm.

(d)     After purchasing the firearm for defendant NAKIA ADAMS, Jessica Gonzalez gave the firearm to defendant ADAMS.

8.     On or about June 20, 2015:

(a)     While in Lancaster, Pennsylvania, Malachi Kelchner recommended to defendant NAKIA ADAMS that Jessica Gonzalez straw purchase firearms for defendant ADAMS at Bass Pro Shop, an FFL in Harrisburg, Pennsylvania.

(b)     Defendant NAKIA ADAMS drove Jessica Gonzalez and Malachi Kelchner from Lancaster, Pennsylvania to Bass Pro Shop, where defendant ADAMS instructed Jessica Gonzalez to purchase multiple firearms for defendant ADAMS.

(c)     Defendant NAKIA ADAMS provided Jessica Gonzalez with cash to make the firearms' purchase.

(d)     Jessica Gonzalez and Malachi Kelchner entered Bass Pro Shop, accompanied by defendant NAKIA ADAMS, and purchased two firearms for a total of $598.58, as follows: (i) a Taurus, Model PT709 Slim, 9 mm semiautomatic pistol with serial number TIO58519; and (ii) a Taurus, Model 740 Slim, .40 caliber semiautomatic pistol with serial number SIR42135, falsely representing on the Form 4473 that Jessica Gonzalez was the actual buyer of the firearms.

(e)     After purchasing the firearms for defendant NAKIA ADAMS, Jessica Gonzalez gave the firearms to defendant ADAMS.

(f)     After the purchase of the three firearms on June 20, 2015 at Kinsey's and Bass Pro Shop, defendant NAKIA ADAMS, Jessica Gonzalez and Malachi Kelchner drove to

Newark, New Jersey, where defendant ADAMS sold or traded the three firearms to an individual

unknown to the grand jury in exchange for cash or drugs, or both.

      9.    On or about June 21, 2015:

      (a)    Defendant NAKIA ADAMS instructed Jessica Gonzalez to drive Randy

Johnson to Cabela's, where the two of them were instructed each to purchase multiple firearms

for defendant ADAMS.

      (b)    Defendant NAKIA ADAMS provided Jessica Gonzalez with cash

adequate for Jessica Gonzalez and Randy Johnson each to purchase multiple firearms.

      (c)    Jessica Gonzalez drove Malachi Kelchner and Randy Johnson in

defendant NAKIA ADAMS' automobile from Lancaster to Cabela's.   Once there, Jessica

Gonzalez and Malachi Kelchner accompanied Randy Johnson inside Cabela's where Johnson

purchased two firearms for a total of $686.38, as follows: (i) a Smith & Wesson, Model SD9VE,

9 mm semiautomatic pistol with serial number FWN6111; and (ii) a Smith & Wesson, Model

SD40VE, .40 caliber semiautomatic pistol with serial number FWU2486, falsely representing on

the Form 4473 that Randy Johnson was the actual buyer of the firearms.

      (d)    After the purchase of firearms for defendant NAKIA ADAMS was

completed, Jessica Gonzalez drove Randy Johnson and Malachi Kelchner back to Lancaster,

Pennsylvania.   Upon arriving in Lancaster, Jessica Gonzalez gave the firearms to defendant

ADAMS.   On September 21, 2015, the Smith & Wesson, model SD40VE, .40 caliber

semiautomatic pistol with serial number FWU2486, straw purchased by Randy Johnson for

defendant ADAMS, was recovered from D.K., an individual arrested on that date by law

enforcement in Newark, New Jersey.   On November 9, 2015, the Smith & Wesson, model

SD9VE, 9mm semiautomatic pistol with serial number FWN6111, straw purchased by Randy

Johnson for defendant ADAMS, was recovered from I.A., an individual arrested on that date by law enforcement in Newark, New Jersey.

10.   On or about June 22, 2015:

(a)   Defendant NAKIA ADAMS drove Jessica Gonzalez and Malachi Kelchner to Kinsey's, and defendant ADAMS instructed Jessica Gonzalez to purchase multiple firearms for defendant ADAMS.

(b)   Defendant NAKIA ADAMS provided Jessica Gonzalez with cash to make the firearms' purchase.

(c)   Jessica Gonzalez and Malachi Kelchner entered Kinsey's and purchased one firearm for $291.19, that is a Taurus, Model PT111 G2, 9 mm semiautomatic pistol with serial number TIN49752, falsely representing on the Form 4473 that Jessica Gonzalez was the actual buyer of the firearm.

(d)   After purchasing the firearm for defendant NAKIA ADAMS, Jessica Gonzalez gave the firearm to defendant ADAMS.

11.   On or about June 22, 2015:

(a)   Defendant NAKIA ADAMS drove Jessica Gonzalez and Malachi Kelchner to Trop Gun Shop, and defendant ADAMS instructed Jessica Gonzalez to purchase multiple firearms for defendant ADAMS.

(b)   Defendant NAKIA ADAMS provided Jessica Gonzalez with cash to make the firearms' purchase.

(c)   Jessica Gonzalez and Malachi Kelchner entered Trop Gun Shop and purchased one firearm for $301.79, that is a SAR Arms, Model B6PC, 9 mm semiautomatic pistol with serial number T110214G00783, falsely representing on the Form 4473 that Jessica Gonzalez

11

was the actual buyer of the firearm.

      (d)      After purchasing the firearm for defendant NAKIA ADAMS, Jessica

Gonzalez gave the firearm to defendant ADAMS.

      12.      On or about July 9, 2015:

      (a)      Defendant NAKIA ADAMS drove Sitara Rathod to Backwoods

Outfitters, and defendant ADAMS instructed Sitara Rathod to purchase a firearm for defendant

ADAMS.

      (b)      Defendant NAKIA ADAMS provided Sitara Rathod with cash to make the

firearm purchase.

      (c)      Sitara Rathod entered Backwoods Outfitters and attempted to purchase

one firearm for $286.15, that is an SCCY, Model CPX1, 9 mm semiautomatic pistol with serial

number 196563, falsely representing on the Form 4473 that Sitara Rathod was the actual buyer of

the firearm.

      (d)      Backwoods Outfitters denied the purchase of the firearm.

      13.      On or about July 10, 2015:

      (a)      While in Lancaster, Pennsylvania, defendant NAKIA ADAMS told Sitara

Rathod that he and Sitara Rathod would travel outside of Lancaster to an FFL where Sitara

Rathod would not be denied the purchase of firearms.

      (b)      Defendant NAKIA ADAMS drove Sitara Rathod from Lancaster to Jim

Hake's, where defendant ADAMS instructed Sitara Rathod 2 to purchase a firearm for defendant

ADAMS.

      (c)      Defendant NAKIA ADAMS provided Sitara Rathod with cash to make the

firearm purchase and instructed Sitara Rathod on the make of firearm to purchase.

12

     (d)     Sitara Rathod entered Jim Hake's and purchased one firearm for $344.19, that is a Smith and Wesson, Model SD40VE, .40 caliber semiautomatic pistol with serial number FWU9680, falsely representing on the Form 4473 that Sitara Rathod was the actual buyer of the firearm.

     (e)     After purchasing the firearm for defendant NAKIA ADAMS, Sitara Rathod gave the firearm to defendant ADAMS.

     14.     On or about July 29, 2015:

     (a)     Defendant NAKIA ADAMS was a passenger in a car with two other individuals who drove Sitara Rathod from Lancaster, Pennsylvania to Jim Hake's, where defendant ADAMS instructed Sitara Rathod to purchase a firearm for defendant ADAMS.

     (b)     Defendant NAKIA ADAMS provided Sitara Rathod with cash to make the firearm purchase and instructed Sitara Rathod on the make of the firearm to purchase.

     (c)     Sitara Rathod entered Jim Hake's and attempted to purchase one firearm for $344.19, that is a Smith and Wesson, Model SD40VE, .40 caliber semiautomatic pistol with serial number FWW4231, falsely representing on the Form 4473 that Sitara Rathod was the actual buyer of the firearm.

     (d)     Jim Hake's denied the purchase of the firearm.

     All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1, 7-11, and 13, and Overt Act 1 of Count One are incorporated here.

      2.      On or about May 6, 2015, in Hamburg, in the Eastern District of Pennsylvania, defendant

**NAKIA ADAMS,**
a/k/a "S,"
a/k/a "SHAWN,"

in connection with the acquisition of three firearms, that is, (i) a Taurus, model 709 SLIM, 9 mm semiautomatic pistol with serial number TIO80940; (ii) a Taurus, model 709 SLIM, 9 mm semiautomatic pistol with serial number TIO81095; and (iii) a Smith & Wesson, model SW40F, .40 caliber semiautomatic pistol with serial number PAA3575, knowingly made, aided and abetted and willfully caused the making of, a false statement and representation with respect to information required by the provisions of Chapter 44, Title 18, United States Code, to be kept in the records of Cabela's, a federally licensed firearms dealer, in that, at the direction of defendant ADAMS, Elvin Reyes, Jr. (the "straw purchaser"), charged elsewhere, falsely certified on ATF Form 4473, Firearms Transaction Record, that Elvin Reyes Jr. was the actual buyer of the firearms, when in fact, defendant ADAMS and Elvin Reyes Jr. knew this statement was false and fictitious.

      In violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

14

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 2, 7-11, and 13, and Overt Act 2 of Count One are incorporated here.

      2.      On or about May 7, 2015, in Columbia, in the Eastern District of Pennsylvania, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

in connection with the acquisition of three firearms, that is, (i) a Taurus, model 24/7, .45 caliber semiautomatic pistol with serial number NIM20035; (ii) a Taurus, model 24/7C, .40 caliber semiautomatic pistol with serial number SHR40400; and (iii) a Taurus, model 24/7, .40 caliber semiautomatic pistol with serial number SHP34831, knowingly made, aided and abetted and willfully caused the making of, a false statement and representation with respect to information required by the provisions of Chapter 44, Title 18, United States Code, to be kept in the records of Backwoods Outfitters, a federally licensed firearms dealer, in that, at the direction of defendant ADAMS, Elvin Reyes, Jr. (the "straw purchaser"), charged elsewhere, falsely certified on ATF Form 4473, Firearms Transaction Record, that Elvin Reyes Jr. was the actual buyer of the firearms, when in fact, defendant ADAMS and Elvin Reyes Jr. knew this statement was false and fictitious.

      In violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

15

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 2, 7-11, and 13, and Overt Act 3 of Count One are incorporated herein.

      2.      On or about May 13, 2015, in Columbia, in the Eastern District of Pennsylvania, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

in connection with the acquisition of three firearms, that is, (i) a Ruger, model LC9, 9mm semiautomatic pistol with serial number 322-38598; (ii) a SCCY, model CPX2, 9mm semiautomatic pistol with serial number 219435; and (iii) an SCCY, model CPX2, 9mm semiautomatic pistol with serial number 219460, knowingly made, aided and abetted and willfully caused the making of, a false statement and representation with respect to information required by the provisions of Chapter 44, Title 18, United States Code, to be kept in the records of Backwoods Outfitters, a federally licensed firearms dealer, in that, at the direction of defendant ADAMS, Elvin Reyes, Jr. (the "straw purchaser"), charged elsewhere, falsely certified on ATF Form 4473, Firearms Transaction Record, that Elvin Reyes Jr. was the actual buyer of the firearms, when in fact, defendant ADAMS and Elvin Reyes Jr. knew this statement was false and fictitious.

      In violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

16

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 2, 7-11, and 13, and Overt Act 4 of Count One are incorporated here.

      2.      On or about May 19, 2015, in Columbia, in the Eastern District of Pennsylvania, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

in connection with the attempted acquisition of three firearms, that is, (i) a Kel-Tec, model P11, 9mm semiautomatic pistol with serial number AW554; (ii) a Bersa Thunder, model Thunder, .40 caliber semiautomatic pistol with serial number F36946; and (iii) an SCCY, model CPX1, 9mm semiautomatic pistol with serial number 213200, knowingly made, aided and abetted and willfully caused the making of, a false statement and representation with respect to information required by the provisions of Chapter 44, Title 18, United States Code, to be kept in the records of Backwoods Outfitters, a federally licensed firearms dealer, in that, at the direction of defendant ADAMS, Elvin Reyes, Jr. (the "straw purchaser"), charged elsewhere, falsely certified on ATF Form 4473, Firearms Transaction Record, that Elvin Reyes Jr. was the actual buyer of the firearms, when in fact, defendant ADAMS and Elvin Reyes Jr. knew this statement was false and fictitious.

      In violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

17

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 2, 7-11, and 13, and Overt Act 5 of Count One are incorporated here.

2.     On or about June 19, 2015, in Columbia, in the Eastern District of Pennsylvania, defendant

**NAKIA ADAMS,**
a/k/a "S,"
a/k/a "SHAWN,"

in connection with the attempted acquisition of two firearms, that is, (i) a Kel-Tec, Model P11, 9 mm semiautomatic pistol with serial number AW554; and (ii) a Smith & Wesson, Model SW40VE, .40 caliber semiautomatic pistol with serial number PDN1830, knowingly made, aided and abetted and willfully caused the making of, a false statement and representation with respect to information required by the provisions of Chapter 44, Title 18, United States Code, to be kept in the records of Backwoods Outfitters, a federally licensed firearms dealer, in that, at the direction of defendant ADAMS, Jessica Gonzalez (the "straw purchaser"), charged elsewhere, falsely certified on ATF Form 4473, Firearms Transaction Record, that Jessica Gonzalez was the actual buyer of the firearms, when in fact, defendant ADAMS and Jessica Gonzalez knew this statement was false and fictitious.

In violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

## COUNT SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.      Paragraphs 3, 7-11, and 13, and Overt Act 6 of Count One are incorporated here.

        2.      On or about June 19, 2015, in Elizabethtown, in the Eastern District of Pennsylvania, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

in connection with the acquisition of two firearms, that is, (i) a Taurus, Model PT140, .40 caliber semiautomatic pistol with serial number SAM92140; and (ii) a Taurus, Model PT 24/7, .45 caliber semiautomatic pistol with serial number NZI04849, knowingly made, aided and abetted and willfully caused the making of, a false statement and representation with respect to information required by the provisions of Chapter 44, Title 18, United States Code, to be kept in the records of Trop Gun Shop, a federally licensed firearms dealer, in that, at the direction of defendant ADAMS, Jessica Gonzalez (the "straw purchaser"), charged elsewhere, falsely certified on ATF Form 4473, Firearms Transaction Record, that Jessica Gonzalez was the actual buyer of the firearms, when in fact, defendant ADAMS and Jessica Gonzalez knew this statement was false and fictitious.

        In violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

19

## COUNT EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 4, 7-11, and 13, and Overt Act 7 of Count One are incorporated here.

      2.      On or about June 20, 2015, in Mount Joy, in the Eastern District of Pennsylvania, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

in connection with the acquisition of a firearm that is, a Taurus, Model PT111, 9 mm semiautomatic pistol with serial number TUL22702, knowingly made, aided and abetted and willfully caused the making of, a false statement and representation with respect to information required by the provisions of Chapter 44, Title 18, United States Code, to be kept in the records of Kinsey's, a federally licensed firearms dealer, in that, at the direction of defendant ADAMS, Jessica Gonzalez (the "straw purchaser"), charged elsewhere, falsely certified on ATF Form 4473, Firearms Transaction Record, that Jessica Gonzalez was the actual buyer of the firearm, when in fact, defendant ADAMS and Jessica Gonzalez knew this statement was false and fictitious.

      In violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

20

## COUNT NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.      Paragraphs 1, 7-11, and 13, and Overt Act 9 of Count One are incorporated here.

       2.      On or about June 21, 2015, in Hamburg, in the Eastern District of Pennsylvania, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

in connection with the acquisition of two firearms that is, (i) a Smith & Wesson, Model SD9VE, 9 mm semiautomatic pistol with serial number FWN6111; and (ii) a Smith & Wesson, Model SD40VE, .40 caliber semiautomatic pistol with serial number FWU2486, knowingly made, aided and abetted and willfully caused the making of, a false statement and representation with respect to information required by the provisions of Chapter 44, Title 18, United States Code, to be kept in the records of Cabela's, a federally licensed firearms dealer, in that, at the direction of defendant ADAMS, Randy Johnson (the "straw purchaser"), charged elsewhere, falsely certified on ATF Form 4473, Firearms Transaction Record, that Randy Johnson was the actual buyer of the firearms, when in fact, defendant ADAMS and Randy Johnson knew this statement was false and fictitious.

       In violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

21

## COUNT TEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 4, 7-11, and 13, and Overt Act 10 of Count One are incorporated here.

2.      On or about June 22, 2015, in Mount Joy, in the Eastern District of Pennsylvania, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

in connection with the acquisition of a firearm that is, a Taurus, Model PT111 G2, 9 mm semiautomatic pistol with serial number TIN49752, knowingly made, aided and abetted and willfully caused the making of, a false statement and representation with respect to information required by the provisions of Chapter 44, Title 18, United States Code, to be kept in the records of Kinsey's, a federally licensed firearms dealer, in that, at the direction of defendant ADAMS, Jessica Gonzalez (the "straw purchaser"), charged elsewhere, falsely certified on ATF Form 4473, Firearms Transaction Record, that Jessica Gonzalez was the actual buyer of the firearm, when in fact, defendant ADAMS and Jessica Gonzalez knew this statement was false and fictitious.

In violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

## COUNT ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

   1. Paragraphs 3, 7-11, and 13, and Overt Act 11 of Count One are incorporated here.

   2. On or about June 22, 2015, in Elizabethtown, in the Eastern District of Pennsylvania, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

in connection with the acquisition of a firearm that is, a SAR Arms, Model B6PC, 9 mm semiautomatic pistol with serial number T110214G00783, knowingly made, aided and abetted and willfully caused the making of, a false statement and representation with respect to information required by the provisions of Chapter 44, Title 18, United States Code, to be kept in the records of Trop Gun Shop, a federally licensed firearms dealer, in that, at the direction of defendant ADAMS, Jessica Gonzalez (the "straw purchaser"), charged elsewhere, falsely certified on ATF Form 4473, Firearms Transaction Record, that Jessica Gonzalez was the actual buyer of the firearm, when in fact, defendant ADAMS and Jessica Gonzalez knew this statement was false and fictitious.

   In violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

### COUNT TWELVE

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.      Paragraphs 2, 7-11, and 13, and Overt Act 12 of Count One are incorporated here.

        2.      On or about July 9, 2015, in Columbia, in the Eastern District of Pennsylvania, defendant

**NAKIA ADAMS,**
a/k/a "S,"
a/k/a "SHAWN,"

in connection with the attempted acquisition of a firearm that is, an SCCY, Model CPX1, 9 mm semiautomatic pistol with serial number 196563, knowingly made, aided and abetted and willfully caused the making of, a false statement and representation with respect to information required by the provisions of Chapter 44, Title 18, United States Code, to be kept in the records of Backwoods Outfitters, a federally licensed firearms dealer, in that, at the direction of defendant ADAMS, Sitara Rathod (the "straw purchaser"), charged elsewhere, falsely certified on ATF Form 4473, Firearms Transaction Record, that Sitara Rathod was the actual buyer of the firearm, when in fact, defendant ADAMS and Sitara Rathod knew this statement was false and fictitious.

        In violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

24

## COUNT THIRTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 6, 2015, in Hamburg, in the Eastern District of

Pennsylvania, and elsewhere, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

having been convicted in a court of the State of New Jersey of a crime punishable by

imprisonment for a term exceeding one year, knowingly possessed in and affecting interstate and

foreign commerce three firearms, as follows: (i) a Taurus, model 709 SLIM, 9 mm semiautomatic

pistol with serial number TIO80940; (ii) a Taurus, model 709 SLIM, 9 mm semiautomatic pistol

with serial number TIO81095; and (iii) a Smith & Wesson, model SW40F, .40 caliber

semiautomatic pistol with serial number PAA3575.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT FOURTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 7, 2015, in Columbia, in the Eastern District of

Pennsylvania, and elsewhere, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

having been convicted in a court of the State of New Jersey of a crime punishable by

imprisonment for a term exceeding one year, knowingly possessed in and affecting interstate and

foreign commerce three firearms, as follows: (i) a Taurus, model 24/7, .45 caliber semiautomatic

pistol with serial number NIM20035; (ii) a Taurus, model 24/7C, .40 caliber semiautomatic pistol

with serial number SHR40400; and (iii) a Taurus, model 24/7, .40 caliber semiautomatic pistol

with serial number SHP34831, which was recovered on June 30, 2015 from A.B., an individual

arrested on that date by law enforcement in Newark, New Jersey.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT FIFTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 13, 2015, in Columbia, in the Eastern District of

Pennsylvania, and elsewhere, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

having been convicted in a court of the State of New Jersey of a crime punishable by

imprisonment for a term exceeding one year, knowingly possessed in and affecting interstate and

foreign commerce three firearms, as follows: (i) a Ruger, model LC9, 9mm semiautomatic pistol

with serial number 322-38598, which was recovered on September 3, 2015 from R.R., an

individual arrested on that date by law enforcement in Newark, New Jersey; (ii) a SCCY, model

CPX2, 9mm semiautomatic pistol with serial number 219435; and (iii) an SCCY, model CPX2,

9mm semiautomatic pistol with serial number 219460, which was recovered on September 24,

2015 from A.J., an individual arrested on that date by law enforcement in Newark, New Jersey.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT SIXTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 19, 2015, in Elizabethtown, in the Eastern District of

Pennsylvania, and elsewhere, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

having been convicted in a court of the State of New Jersey of a crime punishable by

imprisonment for a term exceeding one year, knowingly possessed in and affecting interstate and

foreign commerce a firearm, as follows: (i) a Taurus, Model PT140, .40 caliber semiautomatic

pistol with serial number SAM92140; and (ii) a Taurus, Model PT 24/7, .45 caliber semiautomatic

pistol with serial number NZI04849.

In violation of Title 18, United States Code, Section 922(g)(1).

28

## COUNT SEVENTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 20, 2015, in Mount Joy, in the Eastern District of

Pennsylvania, and elsewhere, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

having been convicted in a court of the State of New Jersey of a crime punishable by

imprisonment for a term exceeding one year, knowingly possessed in and affecting interstate and

foreign commerce a firearm, as follows: (i) a Taurus, Model PT111, 9 mm semiautomatic pistol

with serial number TUL22702; (ii) a Taurus, Model PT709 Slim, 9 mm semiautomatic pistol with

serial number TIO58519; and (iii) a Taurus, Model 740 Slim, .40 caliber semiautomatic pistol with

serial number SIR42135.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT EIGHTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 21, 2015, in Lancaster, in the Eastern District of

Pennsylvania, and elsewhere, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

having been convicted in a court of the State of New Jersey of a crime punishable by

imprisonment for a term exceeding one year, knowingly possessed in and affecting interstate and

foreign commerce a firearm, as follows: (i) a Smith & Wesson, Model SD9VE, 9 mm

semiautomatic pistol with serial number FWN6111, which was recovered on November 9, 2015

from I.A., an individual arrested on that date by law enforcement in Newark, New Jersey; and (ii)

a Smith & Wesson, Model SD40VE, .40 caliber semiautomatic pistol with serial number

FWU2486, which was recovered on September 21, 2015 from D.K., an individual arrested on that

date by law enforcement in Newark, New Jersey.

In violation of Title 18, United States Code, Section 922(g)(1).

### COUNT NINTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 22, 2015, in Elizabethtown, in the Eastern District of

Pennsylvania, and elsewhere, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

having been convicted in a court of the State of New Jersey of a crime punishable by

imprisonment for a term exceeding one year, knowingly possessed in and affecting interstate and

foreign commerce a firearm, as follows: (i) a Taurus, Model PT111 G2, 9 mm semiautomatic

pistol with serial number TIN49752; and (ii) a SAR Arms, Model B6PC, 9 mm semiautomatic

pistol with serial number T110214G00783.

In violation of Title 18, United States Code, Section 922(g)(1).

31

### COUNT TWENTY

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 10, 2015, in Lancaster, in the Eastern District of

Pennsylvania, and elsewhere, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

having been convicted in a court of the State of New Jersey of a crime punishable by imprisonment

for a term exceeding one year, knowingly possessed in and affecting interstate and foreign

commerce a firearm, that is, a Smith & Wesson, Model SD40VE, .40 caliber semiautomatic pistol

with serial number FWU9680.

In violation of Title 18, United States Code, Section 922(g)(1).

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

As a result of the violations of Title 18, United States Code, Sections 922 (g)(1) and 924(a)(1)(A), set forth in this indictment, defendant

**NAKIA ADAMS,**
**a/k/a "S,"**
**a/k/a "SHAWN,"**

shall forfeit to the United States of America, all firearms involved in the commission of these offenses, including

1. a Taurus, Model PT140, .40 caliber semiautomatic pistol with serial number SAM92140;

2. a Taurus, Model PT 24/7, .45 caliber semiautomatic pistol with serial number NZI04849;

3. a Taurus, Model PT111, 9 mm semiautomatic pistol with serial number TUL22702;

4. a Smith & Wesson, Model SD9VE, 9 mm semiautomatic pistol with serial number FWN6111;

5. a Smith & Wesson, Model SD40VE, .40 caliber semiautomatic pistol with serial number FWU2486;

6. a Taurus, Model PT111 G2, 9 mm semiautomatic pistol with serial number TIN49752;

7. a SAR Arms, Model B6PC, 9 mm semiautomatic pistol with serial number T110214G00783; and

8. a Taurus, model 709 SLIM, 9 mm semiautomatic pistol with serial number TIO80940;

9. a Taurus, model 709 SLIM, 9 mm semiautomatic pistol with serial number TIO81095;

10.   a Smith & Wesson, model SW40F, .40 caliber semiautomatic pistol with serial number PAA3575;

11.   a Taurus, model 24/7, .45 caliber semiautomatic pistol with serial number NIM20035;

12.   a Taurus, model 24/7C, .40 caliber semiautomatic pistol with serial number SHR40400;

13.   a Taurus, model 24/7, .40 caliber semiautomatic pistol with serial number SHP34831;

14.   a Ruger, model LC9, 9mm semiautomatic pistol with serial number 322-38598;

15.   an SCCY, model CPX2, 9mm semiautomatic pistol with serial number 219435;

16.   an SCCY, model CPX2, 9mm semiautomatic pistol with serial number 219460;

17.   a Taurus, Model PT709 Slim, 9 mm semiautomatic pistol with serial number TIO58519;

18.   a Taurus, Model 740 Slim, .40 caliber semiautomatic pistol with serial number SIR42135; and

19.   a Smith and Wesson, Model SD40VE, .40 caliber semiautomatic pistol with serial number FWU9680.

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 924(d).

A TRUE BILL:

_____

**GRAND JURY FOREPERSON**

**ZANE DAVID MEMEGER**
**United States Attorney**

35

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUPERSEDING INDICTMENT – Criminal No. 15-580

DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:   615 Chestnut Street, Suite 1250, Philadelphia, PA 19106-4476

Post Office: __Philadelphia____          County:   _Philadelphia_____

City and State of Defendant:   __Unknown__

County: __Unknown__          Register number: _N/A_____

Place of accident, incident, or transaction:          Eastern District of Pennsylvania_

Post Office: _Philadelphia___          County:   __Philadelphia__

RELATED CASE, IF ANY:

Criminal cases are deemed related when the answer to the following question is "yes".

> Does this case involve a defendant or defendants alleged to have participated in the same action or transaction, or in the same series of acts or transactions, constituting an offense or offenses?

YES/NO: **YES**

U.S. v. Elvin Reyes, Jr., Criminal No. 15-342; Judge Schmehl
U.S. v. Jessica Victoria Gonzalez, Criminal No. 15-391; Judge Schmehl
U.S. v. Sitara Rathod – Criminal No. 15-460; Judge Schmehl
U.S. v. Randy Johnson – Criminal No. 15-494; Judge Schmehl
U.S. v. Malachi Kelchner – Criminal No. 15-524; Judge Schmehl
U.S. v. Latosha Williams – Criminal No. 15-525; Judge Schmehl

CRIMINAL:   (Criminal Category - FOR USE BY U.S. ATTORNEY ONLY)

1.          ◌ Antitrust

2.          ◌ Income Tax and other Tax Prosecutions

3.          ◌ Commercial Mail Fraud

4.          ◌ Controlled Substances

5.          ◌ Violations of 18 U.S.C. Chapters 95 and 96 (Sections 1951-55 and 1961-68) and Mail Fraud other than commercial

6.          ◉ General Criminal

See Reverse Side

(U.S. ATTORNEY WILL PLEASE DESIGNATE PARTICULAR CRIME AND
STATUTE CHARGED TO BE VIOLATED AND STATE ANY PREVIOUS
CRIMINAL NUMBER FOR SPEEDY TRIAL ACT TRACKING PURPOSES)

18 U.S.C. § 371 (conspiracy – 1 count)
18 U.S.C. § 924(a)(1)(A)(making false statements to a federal firearms licensee – 11 counts)
18 U.S.C. § 922(g)(1)(felon in possession of a firearm – 8 counts)
18 U.S.C. § 2(aiding and abetting)
Notice of forfeiture

---

DATE: February 2, 2016

ERIC A. BODEN
Assistant United States Attorney

File No. 2015R00804
U.S. v. Nakia Adams

# EXHIBIT B

**Chart of Overt Acts in the Superseding Indictment**

| No. | Date | Name - Store | Weapons Attempted or Purchased |
|---|---|---|---|
| 1 | 5-6-15 | Elvin Reyes, Jr. - Cabela's | Taurus, model 709 SLIM, 9 mm semiautomatic pistol with serial number TI080940; (2) a Taurus, model 709 SLIM, 9 mm semiautomatic pistol with serial number TI081095; and (3) a Smith & Wesson, model SW40F, .40 caliber semiautomatic pistol with serial number PAA3575 |
| 2 | 5-7-15 | Elvin Reyes, Jr. - Backwoods Outfitters | a Taurus, model 24/7, .45 caliber semiautomatic pistol with serial number NIM20035; (ii) a Taurus, model 24/7C, .40 caliber semiautomatic pistol with serial number SHR40400; and (iii) a Taurus, model 24/7, .40 caliber semiautomatic pistol with serial number SHP34831 |
| 3 | 5-13-15 | Elvin Reyes, Jr. - Backwoods Outfitters | a Ruger, model LC9, 9mm semiautomatic pistol with serial number 322-38598; (ii) a SCCY, model CPX2, 9mm semiautomatic pistol with serial number 219435; and (iii) an SCCY, model CPX2, 9mm semiautomatic pistol with serial number 219460 |
| 4 | 5-19-15 | Elvin Reyes, Jr. - Backwoods Outfitters | a Kel-Tec, model P11, 9mm semiautomatic pistol with serial number AW554; (ii) a Bersa Thunder, model Thunder, .40 caliber semiautomatic pistol with serial number F36946; and (iii) an SCCY, model CPX1, 9mm semiautomatic pistol with serial number 213200 |
| 5 | 6-19-15 | Jessica Gonzalez and Malachi Kelchner - Backwood Outfitters | (I) a Kel-Tec, Model P11, 9 mm semiautomatic pistol with serial number AW554; and (ii) a Smith & Wesson, Model SW40VE, .40 caliber semiautomatic pistol with serial number PDN1830 |

| 6 | 6-19-15 | Jessica Gonzalez and Malachi Kelchner - Trop Gun Shop | (i) a Taurus, Model PT140, .40 caliber semiautomatic pistol with serial number SAM92140; and (ii) a Taurus, Model PT 24/7, .45 caliber semiautomatic pistol with serial number NZI04849 |
| 7 | 6-20-15 | Jessica Gonzalez and Malachi Kelchner - Kinsey's | a Taurus, Model PT111, 9 mm semiautomatic pistol with serial number TUL22702 |
| 8 | 6-20-15 | Jessica Gonzalez and Malachi Kelchner - Bass Pro Shop | (i) a Taurus, Model PT709 Slim, 9 mm semiautomatic pistol with serial number TI058519; and (ii) a Taurus, Model 740 Slim, .40 caliber semiautomatic pistol with serial number SIR42135 |
| 9 | 6-21-15 | Jessica Gonzalez, Malachi Kelchner, Randy Johnson - Cabela's | (i) a Smith & Wesson, Model SD9VE, 9 mm semiautomatic pistol with serial number FWN6111; and (ii) a Smith & Wesson, Model SD40VE, .40 caliber semiautomatic pistol with serial number FWU2486 |
| 10 | 6-22-15 | Jessica Gonzalez, Malachi Kelchner - Kinsey's | a Taurus, Model PT111 G2, 9 mm semiautomatic pistol with serial number TIN49752 |
| 11 | 6-22-15 | Jessica Gonzalez, Malachi Kelchner - Trop Gun Shop | a SAR Arms, Model B6PC, 9 mm semiautomatic pistol with serial number TI10214G00783 |
| 12 | 7-9-15 | Sitara Rathod - Backwoods Outfitters | an SCCY, Model CPXl, 9 mm semiautomatic pistol with serial number 196563 |
| 13 | 7-10-15 | Sitara Rathod - Jim Hake's | a Smith and Wesson, Model SD40VE, .40 caliber semiautomatic pistol with serial number FWU9680 |
| 14 | 7-29-15 | Sitara Rathod - Jim Hake's | a Smith and Wesson, Model SD40VE, .40 caliber semiautomatic pistol with serial number FWW 4231 |

CERTIFICATE OF SERVICE

I, LUTHER E. WEAVER, III, ESQUIRE, hereby certify that I have served a copy of the within

Defendant Nakia Adams' Motion to Dismiss Count One of the Superseding Indictment upon counsel for

the Government by electronic transmission as follows:

Eric A. Boden, Esquire
Assistant United States Attorney
Suite 1250
615 Chestnut Street
Philadelphia, PA 19106-4476


LUTHER E. WEAVER, III, ESQUIRE

DATE: August 31, 2017